# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

**RAY EDWARDS,**

    **Plaintiff,**

**v.**

                    **Case No.: CV 03-P-2522-NE**

**CITY OF MADISON, ALABAMA, et al.,**

    **Defendants.**

}
}
}
}
}
}
}
}
}
}
}

**ENTERED**

**MAY 1 4 2004**

## MEMORANDUM OPINION

    The case is before the court on Defendant City of Madison Police Department's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. # 47) filed January 13, 2004; Defendant Jan Wells, Daniel Busken, and Lee Weaver's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. # 50) filed January 13, 2004; and Defendant City of Madison's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. # 53) filed January 13, 2004. The issues raised therein have been fully briefed by the parties and are now ripe for decision. A hearing on the above-referenced motions was held on May 13, 2004. Upon due consideration, the motions to dismiss are due to be granted in part and denied in part, as set forth below.

## I.     Facts of the Case According to Plaintiff's Complaint

    The plaintiff, Ray Edwards ("Edwards"), asserts claims arising from his employment against defendants the City of Madison, Alabama (the "City"); the City of Madison Police Department (the "Madison Police"); Daniel Busken, the Police Chief of the Madison Police ("Chief Busken"); Lee Weaver, a Major of the Madison Police ("Major Weaver"); and Jan Wells, the Mayor of the City ("Mayor Wells"). Plaintiff is an African-American police officer employed by the City during the



relevant time period. (Doc. # 46, at ¶ 1).  Plaintiff also was employed until August 2002 as a narcotics investigator.  (Doc. # 46, at ¶ 9).

From July-September 2002, Chief Busken and Major Weaver conducted an investigation into alleged violations of department rules by Plaintiff.  (Doc. # 46, at ¶ 7).  Plaintiff claims that Defendants did not provide him notice or information about the investigations, put disciplinary notices in Plaintiff's personnel file without his knowledge, and did not investigate or discipline white police officers who engaged in the same type of conduct. (Doc. # 46, at ¶ 7).  At the conclusion of the investigation in August 2002, Chief Busken allegedly told Plaintiff that he would receive only a written warning, when instead Plaintiff was the subject of another investigation for the same conduct that had already been resolved. (Doc. # 46, at ¶ 8).  Plaintiff also claims that Chief Busken told him that his narcotics investigator position was being eliminated and that,  as a result, Plaintiff was forced to accept a demotion or be terminated, despite his requests for transfer to another position. (Doc. # 46, at ¶¶ 8, 9). Plaintiff claims that shortly after his demotion, the Madison Police began advertising for a new narcotics investigator, hired a white officer in that position, and allowed white officers whose positions had been eliminated to transfer to new positions. (Doc. # 46, at ¶ 9).

Plaintiff complains that, in August 2002, when Plaintiff was restricted to a light duty assignment, Major Weaver allegedly ordered Plaintiff to refrain from carrying a firearm or badge, although she did not require white officers on light duty to do the same.  (Doc. # 46, at ¶ 12).

In December 2002, Chief Busken and Major Weaver allegedly removed the Plaintiff from the SWAT team because he exhibited "bad judgment" and also prevented him from participating in outside employment opportunities.  (Doc. # 46, at ¶¶ 12, 13).  Plaintiff alleges that white officers who exhibited "egregiously bad judgment" were not treated the same, nor were white officers who

2

sought outside employment.  (Doc. # 46, at ¶¶ 12, 13).

In March or April 2003, Plaintiff received a performance evaluation entitling him to a pay raise, which Plaintiff claims was delayed or prevented altogether because Chief Busken unlawfully altered his evaluation. (Doc. # 46, at ¶ 10).   Plaintiff claims that in July 2003, during a Madison Police department meeting, Mayor Wells ordered police officers not to file EEOC complaints against the City.   (Doc. # 46, at ¶ 14).

Plaintiff asserts that all of the above conduct constitutes a racially hostile work environment, in addition to "racially insensitive and charged remarks," ratification of discriminatory conduct, promotion of supervisors with a known history of racism, and discriminatory treatment of black police officers.   (Doc. # 46, at ¶ 15).

## II.    Procedural History

Plaintiff's initial complaint was filed on August 27, 2003 in the Circuit Court for Madison County, Alabama, and was amended on September 5, 2003.  The action was removed to this court on September 12, 2003,  (Doc. # 1), and Defendants contemporaneously filed motions to dismiss. (Docs. # 5, 7, 9). On September 30, 2003, Plaintiff sought leave to amend his complaint, (Doc. # 18), and the court allowed Plaintiff to file his Amended Complaint on November 18, 2003.  (Doc. # 28). On December 12, 2003, Defendants again filed motions to dismiss, (Docs. # 38, 40, 42), and thereafter on December 31, 2003, Plaintiff sought leave to amend his complaint for the second time in this court. (Doc. # 44).  The court permitted Plaintiff to file a Second Amended Complaint on January 6, 2004. (Docs. # 45, 46).  Defendants refiled their motions to dismiss on January 13, 2004, (Docs. # 47, 50, 53), and have each filed briefs in support of those motions.  (Docs. # 48, 51, 54). Plaintiff filed a consolidated objection and response to Defendants' motions on January 29, 2004

(Doc. # 56), and Defendants filed a consolidated reply brief on February 5, 2004.  (Doc. # 57).

## III.   Plaintiff's claims

Plaintiff's Second Amended Complaint asserts the following claims, set forth by reference to the Defendant against whom the claim is asserted:

### A.   All  "Defendants"  (Count XVIII, in part; Count XIX; Count XX, in part, Count XXI)

i.    Fraud, misrepresentation, or deceit in violation of state law when Defendants "innocently, recklessly, or intentionally represented to the Plaintiff that racial discrimination was not acceptable and would not be tolerated in the City of Madison Police Department." (Doc. # 46, at Count XVIII);[1]

ii.   Intentional infliction of emotional distress in violation of state law (Doc. # 46, at Count XIX);

iii.  Interference with express or implied employment contract in violation of 42 U.S.C. § 1981 "by not allowing [Plaintiff] to advance in his employment, by violating the terms of their agreement with the Plaintiff, by discriminating against him, and by harassing him because of his race." (Doc. # 46, at Count XX); and

iv.   Respondeat superior "for the culpable conduct of their employees, representatives, and/or agents." (Doc. # 46, at Count XXI).

### B.   "Defendants and their employees and agents" (Counts II, III, XVI-XVII)

i.    Negligence and/or wantonness in violation of state law, (Doc. # 46, at Count II);

ii.   Negligent and/or wanton hiring, training, and supervision of "Defendants' . . . employees, personnel, and agents," in violation of state law, (Doc. # 46, at Count III);

iii.  Pattern and practice of "outrageous conduct" in violation of state law, (Doc. # 46, at Count XVI); and

---

[1]Count XVIII is asserted against "Defendants City of Madison, Madison Police Department, Daniel Busken, Lee Weaver, Jan Wells, and/or one or more of the Fictitious Parties."

      iv.     Breach of express or implied employment contract (Doc. # 46, at Count XVII).[2]

**C.**     **Defendant Madison only (Count I; Count XX, in part)**

      i.     Race discrimination, harassment, hostile work environment, and retaliation in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*, (Doc. # 46, at Count I);[3]

      ii.     Breach of express or implied employment contract in violation of 42 U.S.C. § 1981 "by not allowing [Plaintiff] to advance in his employment, by violating the terms of their agreement with the Plaintiff, by discriminating against him, and by harassing him because of his race." (Doc. # 46, at Count XX).

**D.**     **Chief Busken only (Counts IV-IX; Count XVIII, in part)**

      i.     Intentional, malicious, or deliberate indifference to Plaintiff's "substantive and procedural due process rights, his equal protection rights, and his right not to be discriminated against, harassed or retaliated against because of his race," in violation of 42 U.S.C. § 1983. (Doc. # 46, at Counts IV-IX). Specifically, Plaintiff claims that Chief Busken violated the "ministerial duties established by Madison and the Madison Police department practices, policies, and procedures" because he: (a) "improperly conducted investigations against the Plaintiff and improperly attempted to discipline the Plaintiff," (Count IV);[4] (b) "improperly forced Plaintiff to accept a demotion," (Count V); (c) "improperly placed inappropriate material in the Plaintiff's personnel file," (Count VI); (d) "improperly removed the Plaintiff from the SWAT team," (Count VII); (e) "improperly denied the Plaintiff the opportunity to other employment, (Count VIII); and (f) "improperly altered the Plaintiff's performance evaluation," (Count IX).

---

[2] Technically, Count XVII is asserted against "Defendant City of Madison, Madison Police Department, and their agents and/or representatives." (Doc. # 46, at Count XVII).

[3] Count I of Plaintiff's complaint levies Title VII allegations against "Defendant Madison" specifically, although Plaintiff then demands judgment against "these Defendants." The court will treat this allegation as a claim against Defendant Madison only.

[4] Plaintiff claims this particular conduct also violated the "Police Bill of Rights" in addition to violating the "ministerial duties established by Madison and the Madison Police department practices, policies, and procedures." (Doc. # 46, at Count IV).

     ii.    Fraud, misrepresentation, or deceit in violation of state law when Chief Busken "innocently, recklessly, or intentionally represented to Plaintiff," (a) that racial discrimination was not acceptable and would not be tolerated in the City of Madison Police Department." (Doc. # 46, at Count XVIII);[5] (b) that the Plaintiff would receive only a warning for conduct alleged against the Plaintiff, (Doc. # 46, at Count XVIII); and (c) that Plaintiff's position as a Narcotics Investigator was being abolished and, as a result, the Plaintiff either request (sic) a voluntary demotion or be terminated. (Doc. # 46, at Count XVIII).

### E.    Major Weaver only (Counts X-XIV)

Intentional, malicious, or deliberate indifference to Plaintiff's "substantive and procedural due process rights, his equal protection rights, and his right not to be discriminated against, harassed or retaliated against because of his race," in violation of 42 U.S.C. § 1983. (Doc. # 46, at Counts X-XIV). Specifically, Plaintiff claims that Major Weaver violated the "ministerial duties established by Madison and the Madison Police department practices, policies, and procedures and/or the Police Bill of Rights" because she: (a) "improperly conducted investigations against the Plaintiff," (Count X); (b) "improperly forced Plaintiff from (sic) carrying a firearm," (Count XI); (c) "improperly placed inappropriate material in the Plaintiff's personnel file," (Count XII); (d) "improperly removed the Plaintiff from the SWAT team," (Count XIII); and (e) "improperly denied the Plaintiff the opportunity to other employment," (Count XIV).[6]

### F.    Mayor Wells only (Count XV)

Intentional, malicious, or deliberate indifference to Plaintiff's "substantive and procedural due process rights, his equal protection rights, and his right not to be discriminated against, harassed or retaliated against because of his race," in violation of 42 U.S.C. § 1983. (Doc. # 46, at Count XV). Specifically, Plaintiff claims that Mayor Wells violated the "ministerial duties established by Madison and the Madison Police department practices, policies, and procedures" because she "prohibited the Plaintiff from pursuing legal claims and created a racially hostile work environment." (Doc. # 46, at Count XV).

---

[5] Technically, this count is asserted against "Defendants City of Madison, Madison Police Department, Daniel Busken, Lee Weaver, Jan Wells, and/or one or more of the Fictitious Parties."

[6] Plaintiff claims this particular conduct violated the Law Enforcement Discipline, Accountability and Due Process Act of 2001, in addition to violating the "ministerial duties established by Madison and the Madison Police department practices, policies, and procedures and/or the Police Bill of Rights." (Doc. # 46, at Count XIV).

## IV.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for failure to

state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6).  A court may dismiss a

complaint under Rule 12(b)(6) only if it appears beyond a doubt that the plaintiff can prove no set

of facts in support of his claims which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41,

45-46 (1957).

In deciding a Rule 12(b)(6) motion, the court must "accept all well-pleaded factual

allegations in the complaint as true and construe the facts in a light most favorable to the non-moving

party." *Dacosta v. Nwachukwa*, 304 F.3d 1045, 1047 (11th Cir. 2002) (citing *GJR Invs., Inc. v.*

*County of Escambia, Fla.*, 132 F.3d 1359, 1367 (11th Cir. 1998)).  "[U]nsupported conclusions of

law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal."

*Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (citing *Marsh v. Butler County*, 268 F.3d

1014, 1036 n.16 (11th Cir. 2001) (en banc)).  Further, "[a] complaint may not be dismissed because

the plaintiff's claims do not support the legal theory he relies upon since the court must determine

if the allegations provide for relief on *any* possible theory." *Brooks v. Blue Cross & Blue Shield of*

*Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (emphasis in original)(citing *Robertson v.*

*Johnston*, 376 F.2d 43 (5th Cir. 1967)).

## V.    Discussion

For the reasons outlined below, the court finds that the numerous claims alleged in Plaintiff's

complaint fall into one of three categories: (1) claims that are due to be dismissed because they fail

to state a claim for relief, (2) claims that survive the Rule 12(b)(6) standard because it does not

appear "beyond a doubt that the plaintiff can prove no set of facts in support of [those] claims which

would entitle him to relief," and (3) claims that must be repleaded in accordance with established law. The court will address each category separately.

### A.    Claims That Are Due to Be Dismissed

As a threshold matter, all claims alleged against the "City of Madison Police Department" are due to be dismissed because, as Plaintiff concedes, the "City of Madison Police Department" is not a legally cognizable entity.[7] Thus, from this point forward, the court's analysis will focus solely on the claims levied against the City and the three individual Defendants. The court finds that the following state law claims are due to be dismissed.

### i.    Counts XVI and XIX: State Law Tort of Outrage.

Count XVI, alleging a pattern and practice of "outrageous conduct" and Count XIX, alleging intentional infliction of emotional distress, are both duplicative and without merit. Under Alabama law, the tort of outrage and intentional infliction of emotional distress are interchangeable. *Callens v. Jefferson County Nursing Home*, 769 So. 2d 273, 281 (Ala. 2001). Moreover, the Alabama Supreme Court has narrowly defined the contours of that claim as a "very limited cause of action that is available only in the most egregious circumstances." *Thomas v. BSE Indus. Contractors, Inc.*, 624 So.2d 1041, 1044 (Ala.1993) (noting that the Alabama Supreme Court "has held in a large majority of the outrage cases reviewed that no jury question was presented"). In fact, Alabama courts have recognized the tort of outrage in only three circumstances: "cases having to do with wrongful conduct in the context of family burials; cases where insurance agents employed heavy-handed,

---

[7] Plaintiff's "Objection and Response to the Defendants' Motions to Dismiss" addresses only the grounds for dismissal asserted by the City, Mayor Wells, Major Weaver, and Chief Buskin, without mention of the argument advanced by the "City of Madison Police Department" that it is not a "sueable" entity. (Doc. # 56). Plaintiff admitted at oral argument that all claims against this entity are due to be dismissed.

barbaric means to coerce a settlement; and cases involving egregious sexual harassment." *Carter v. Harris,* 64 F.Supp.2d 1182, 1194 (M.D.Ala.1999) (citing *Thomas,* 624 So.2d at 1044).

Plaintiff alleges that Defendants' actions, as outlined *supra* in Section I, constitute a "pattern and practice" of outrageous conduct. The court finds that, even "accept[ing] all well-pleaded factual allegations in the complaint as true," Defendants' conduct was not accompanied by the "sound of fury" necessary to sustain a tort of outrage claim. *See Harrell v. Reynolds Metals Co.,* 495 So.2d 1381, 1387 (Ala.1986)). Accordingly, Counts XVI and XIX of Plaintiff's Complaint are due to be dismissed.

<strong>ii.      Count XVIII:   State Law Fraud/Misrepresentation/Deceit Against "Defendants the City of Madison, Madison Police Department, Daniel Busken, Lee Weaver, Jan Wells, and/or one or more of the Fictitious Parties"</strong>

Count XVIII, alleging that Defendants engaged in fraud, misrepresentation, or deceit in violation of state law, is also due to be dismissed. (Doc. # 46, at Count XVIII). Pursuant to Fed. R. Civ. P. 9(b), fraud claims must be alleged with particularity. To satisfy that burden, the Eleventh Circuit has held that a plaintiff must allege, "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997). Thus, a Plaintiff cannot "lump together" all of the Defendants in his allegations of fraud; rather, in cases involving multiple defendants, "the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Brooks*, 116 F.3d at 1381 (citation omitted).

The Plaintiff's Second Amended Complaint alleges generally that "Defendants the City of Madison, Madison Police Department, Daniel Busken, Lee Weaver, Jan Wells, and/or one or more of the Fictitious Parties innocently, recklessly or intentionally represented to the Plaintiff that racial discrimination was not acceptable and would not be tolerated in the City of Madison Police Department." (Doc. # 46, at Count XVIII). This portion of the Plaintiff's fraud claim falls short of the Rule 9(b) requirement because it "is devoid of specific allegations with respect to the separate Defendants" and "fails to set forth the time, place, and manner in which any specific predicate act occurred." *Brooks*, 116 F.3d at 1381.[8] Given that the Plaintiff has now repleaded his claims against Defendants on *three* different occasions– twice with permission from this court while the case was governed by the specificity requirements of Fed. R. Civ. P. 9(b)– the court finds it appropriate to dismiss the portion of Count XVIII which alleges fraud by "Defendants the City of Madison, Madison Police Department, Daniel Busken, Lee Weaver, Jan Wells, and/or one or more of the Fictitious Parties."

### iii. Count XVII: State Law Breach of Contract Against Individual Defendants.

Because the City of Madison is the Plaintiff's employer, and not the individual defendants named in this case, the portion of Count XVII alleging that Chief Busken, Mayor Wells, and/or Major Weaver breached an express or implied employment contract is due to be dismissed.[9] Defendants argue, and Plaintiff does not refute, that Plaintiff's employer was the City of Madison, Alabama and therefore, if Plaintiff had any contract of employment, it was with the City and not the

---

[8] As discussed *infra* Section V(B), the portion of Count XVIII alleging that Chief Busken made certain misrepresentations to Plaintiff remains in the case.

[9] As discussed *infra* Section V(B), the portion of Count XVII addressed to the City of Madison remains in the case.

individual Defendants. (Docs. # 56, 57). Alabama law is clear that a claim for breach of an employment contract is not maintainable against co-employees. *See Harrell v. Reynolds Metals Co.*, 495 So. 2d 1381, 1388-89 (Ala. 1986) (claims for interference with contractual relations and breach of contract are not maintainable as a matter of law by plaintiff against co-employees arising out of termination of employment with employer); *see also Jones v. Triple Crown Services Co.*, 44 F. Supp. 2d 1339 n. 4 (M.D. Ala. 1999).

### iv.   Count XXI: Respondeat Superior.

Although Plaintiff's complaint contains a separately numbered count for "respondeat superior," (Count XXI), that claim is merely a restatement of the negligence and wantonness claims asserted in Counts II and III. Respondeat superior does not stand as an independent claim– it is merely a of liability by which a court holds a principal liable for a tort committed by its agent. *See United Steel Workers of America v. O'Neal*, 437 So. 2d 101, 103 (Ala. 1983). Accordingly, the court finds that Count XXI is due to be dismissed as duplicative and/or derivative.[10]

### v.   Count III: Negligence/Wantonness in Hiring/Training/Supervision.

Plaintiff has alleged that "Defendants and their employees and agents" were negligent and/or wanton in the hiring, training, and supervision of "employees, personnel, and agents," in violation of state law. (Doc. # 46, at Count III). This claim–against both the individual defendants and the City–is due to be dismissed. The court will first address the portion of Count III levied against the individual defendants and then move to the part of Count III asserted against the City.

---

[10] Even if this count were filed under § 1983, there can be no respondeat superior liability under that statute. *Marsh v. Butler County*, 268 F.3d 1014, 1035 (11th Cir. 2001) (en banc).

**Individual Defendants.**  All three of the individual defendants in this case have asserted the defense of discretionary function immunity.  Under Ala. Code § 6-5-338(a), law enforcement officers – Chief Busken and Major Weaver in this case – may be entitled to statutory discretionary function immunity from state law tort claims arising out of the performance of a discretionary function within the line and scope of their law enforcement duties.  Additionally, there is a similar common law discretionary function immunity to which public officials – Mayor Wells in this case – may be entitled.  This common law doctrine provides that "public officials, including municipal employees, have substantive immunity from tort liability for actions taken while they are acting within the line and scope of their official duties and are engaged in the exercise of a discretionary function." *Williams v. Crook*, 741 So. 2d 1074, 1076 (Ala. 1999); *Roden v. Wright*, 646 So. 2d 605, 610 (Ala. 1994).  These immunities apply "unless the officer's conduct is so egregious as to amount to willful and malicious conduct or conduct engaged in bad faith." *Couch v. City of Sheffield*, 708 So. 2d 144, 153 (Ala. 1998); *Ex parte Davis*, 721 So. 2d 685, 689 (Ala. 1998).

Accordingly, the discretionary function analysis is two-pronged.  *Sheth v. Webster*, 145 F.3d 1231, 1238-1239 (11th Cir. 1998).  First, the Defendant public officer must demonstrate that he or she was "engaged in the performance of discretionary functions at the time the alleged torts occurred." *Sheth*, 145 F.3d at 1238.  Once that burden is met, "the burden shifts to the plaintiff to demonstrate that the defendants acted in bad faith, with malice or willfulness in order to deny them immunity." *Sheth*, 145 F.3d at 1239.

With respect to the first prong of the analysis, the question of whether a public official or employee was engaged in a discretionary function at the time of the alleged action is a question of law for the court to decide.  *See Woods v. Wilson*, 539 So.2d 224 (Ala. 1989); *Barnes v. Dell*, 537

12

So.2d 770 (Ala. 1988). "Discretionary functions [are] 'those acts as to which there is no hard and fast rule as to the course of conduct that one must or must not take and those acts requiring exercise in judgment and choice and involving what is just and proper under the circumstances.' " *Ex parte Duvall*, 782 So. 2d 244, 248 (Ala. 2000) (quotations omitted).

Consistent with longstanding case law in Alabama state courts and federal courts in Alabama, this court recognizes that the hiring, training and supervising of subordinate employees are discretionary functions. *See L.S.B. v Howard*, 659 So. 2d 43, 44 (Ala. 1995) ("The exercise of supervisory functions is usually discretionary, because it requires 'constant decision making and judgment' by the person in the supervisory role.") (citations omitted); *Nance v. Matthews*, 622 So. 2d 297, 301-302 (Ala. 1993) (holding that the "supervision" and "retention" of employees are discretionary functions and that "without some degree of immunity for the performance of these functions, public officers and employees who perform them may act not on the basis of policy but with the goal of avoiding personal liability or vexatious suits."); *Phillips v. Thomas*, 555 So. 2d 81, 85 (Ala. 1989) ("With respect to the claim [] for negligent training and supervision [], we have little difficulty concluding that the exercise of such functions is, for the most part, discretionary in nature and, to that extent, affords [defendant] substantive immunity from suit. These duties while perhaps affirmative ones, require constant decision making and  judgment on the part of the supervisor or trainer."); *Marnon v. City of Dothan*, 677 So. 2d 755, 761 (Ala. Civ. App. 1995) ("[W]e conclude that the Commissioners were statutorily vested with discretion in the hiring of Marnon and the termination of Marnon's employment contract. . . . Therefore, the Commissioners were entitled to qualified or discretionary immunity. . . .") (citation omitted); *Ross v. State of Alabama*, 15 F.Supp.2d 1173, 1196 (M.D. Ala. 1998) (same).

13

As to the second prong of the analysis, the court finds that Plaintiff has not met his burden to sufficiently plead that Defendants were guilty of malicious, willful or bad faith conduct in the hiring, training or supervision of employees. Indeed, the complaint contains no such allegation, and the sole basis for liability alleged in Count III of the complaint is that Defendants acted allegedly negligent and wantonly. (Doc. # 46, at Count III).[11]  Even in response to Defendants' motions to dismiss, Plaintiff fails to allege that Defendants were malicious, willful, or acted in bad faith in the supervision of subordinates, and instead offers only speculation that he "believes that the facts in this cause will demonstrate that the Defendants' conduct was so egregious [to prevent immunity]." (Doc. # 56, at 6). This is not sufficient to satisfy his burden.

Accordingly, because Count III involves the discharge of discretionary functions and Plaintiff has failed to demonstrate that the individual defendants engaged in malicious, willful or bad faith hiring, training and supervision, dismissal of this claim is proper. *See, e.g., Williams v. Goldsmith,* 905 F. Supp. 996, 1003 (M.D. Ala. 1995) ("Count VI of the complaint alleges that Defendant Paul [a County Sheriff] 'negligently, recklessly and/or wantonly failed to supervise, instruct or train Defendant Goldsmith in his duties as a Deputy Sheriff' . . . . Sovereign immunity includes a qualified immunity available to state officers acting within the general scope of their authority who perform discretionary functions. . . . State officials responsible for training other employees are entitled to

_____

[11] That Plaintiff alleges Defendants were wanton does not operate in any way to deprive them of discretionary function immunity. *See, e.g., Norris v. City of Montgomery*, 821 So. 2d 149, 156 (Ala. 2001) (". . . § 6-5-338(a), which immunizes police officers from tort liability for conduct involving the exercise of discretion, *makes no exception for wantonness*.") (emphasis in original); *Carroll ex rel. Slaught v. Hammett*, 744 So. 2d 906, 910 (Ala. 1999) ("Discretionary-function immunity protects [a government defendant] from liability not only for negligent conduct but also for wanton conduct. . . ."); *Ex parte Alabama Dep't of Forensic Sciences*, 709 So. 2d 455 (Ala. 1997) (holding that discretionary function immunity barred claims predicated on negligent, reckless, and wanton conduct).

qualified (or substantive) immunity from suits arising out of training activities. . . . Defendant Paul, as Sheriff of Coffee County, possessed the authority to train his deputies, and the exercise of this authority was a discretionary function, entitling him to sovereign immunity from this claim. Therefore, Count VI, the claim against Sheriff Paul for failure to train deputy Goldsmith, will be dismissed.") (internal citation omitted).

**The City**.    Thus, having determined that this claim is due to be dismissed as to the individual defendants, the court now turns to the second part of Count III– the negligent/wanton hiring, training, supervision claim against the City.  Municipal liability in Alabama is limited to two classes under Ala. Code § 11-47-190,  liability for street defects and respondeat superior liability for the alleged wrongful conduct of the City's agents, employees, or officers; it goes without saying that respondeat superior is the only applicable basis for municipal liability in this case.  Ala. Code § 11-47-190; *see also City of Lanett v. Tomlinson*, 659 So. 2d 68, 70 (Ala. 1995).

Section 11-47-190 further limits the respondeat superior liability of municipalities to only claims sounding in *negligence* – those claims arising out of the "neglect, carelessness or unskillfulness of some agent, officer or employee of a municipality engaged in work therefor and while acting in the line of his or her duty." Ala. Code § 11-47-190; *Roberts v. City of Geneva*, 114 F. Supp. 2d 1199, 1213 (M.D. Ala. 2000) ("[Under § 11-47-190], a city's liability is limited to negligence-based claims only.") Under Alabama law, a Plaintiff cannot assert state law tort claims against the City based on an agent's intentional conduct, *Cremeens v. City of Montgomery*, 779 So. 2d 1190, 1201 (Ala. 2000); malicious conduct, *Scott v. City of Mountain Brook*, 602 So. 2d 893, 894-95 (Ala. 1992); reckless conduct, *Altmayer v. City of Daphne*, 613 So. 2d 366, 369 (Ala. 1993); or wanton conduct, *Hilliard v. City of Huntsville*, 585 So. 2d 889, 892 (Ala. 1991).  Accordingly,

Plaintiff's claim that the City wantonly hired, trained, or supervised employees is due to be dismissed.

Moreover, the court finds that Plaintiff cannot sustain his claim that the City acted negligently in hiring, training, or supervision either. Because respondeat superior is derivative liability for the wrongful conduct of the City's agents, Alabama law is clear that, if the agent is immune from direct liability, the City is also immune from liability. *United Steel Workers of America v. O'Neal*, 437 So. 2d 101, 103 (Ala. 1983); *City of Bayou La Batre v. Robinson*, 785 So. 2d 1128, n. 3 (Ala. 2000). As discussed above, the individual defendants in this case enjoy both common law discretionary function immunity and statutory immunity under § 6-5-338(a) for their hiring, training, and supervisory actions. Therefore, under both the common law of respondeat superior[12] and the statutory language of § 6-5-338(b),[13] the City cannot be vicariously liable for those claims either.

---

[12] *See United Steel Workers of America v. O'Neal*, 437 So. 2d 101, 103 (Ala. 1983); *City of Bayou La Batre v. Robinson*, 785 So. 2d 1128, n. 3 (Ala. 2000).

[13] Section 6-5-338 states that it "is intended to extend immunity . . . to peace officers *and governmental units or agencies authorized to appoint peace officers*." § 6-5-338(b), Code of Alabama (1975) (emphasis added). Courts interpreting § 6-5-338 have recognized that the statute directly vests a municipality with the same immunity afforded to its police officers. *See Ex Parte City of Gadsden*, 781 So. 2d 936, 940, (Ala. 2000) ("[W]e conclude that in making that decision [to pursue a suspect rather than secure an accident scene] Officer Arnold was performing a discretionary act and that § 6-5-338(a) gave him immunity from liability. The plain language of § 6-5-338(b) extends that discretionary-function immunity to the City.") (citation omitted); *Montgomery v. City of Montgomery*, 732 So. 2d 305, 312 (Ala. Civ. App. 1999) ("[The police officers] were immune from liability pursuant to § 6-5-338. Furthermore, contrary to the arguments of Montgomery, the plain language of § 6-5-338(b) clearly extends discretionary-function immunity to the City of Montgomery, [the officers'] employer."); *Richards v. Southeast Alabama Youth Services Diversion Center*, 105 F. Supp. 2d 1268, 1282 (M.D. Ala. 2000) ("The statutory provision which governs discretionary function immunity for peace officers has been extended in Alabama to the municipality which employs the peace officer.")

16

### vi.    Count II: State Law Wantonness Against the City.

Finally, the court finds that the general allegations of wantonness against the City found in Count II are also due to be dismissed because, as discussed in Section V(A)(v) *supra*, the Plaintiff's state law claims against the City can only be based on respondeat superior liability and Alabama law is clear that a Plaintiff cannot assert state law tort claims against the City based on an agent's wanton conduct. *Hilliard v. City of Huntsville*, 585 So. 2d 889, 892 (Ala. 1991).

### B.    Claims That Survive the Defendants' Motions to Dismiss

The court has determined that the following claims survive Defendants' motions to dismiss.

### i.    Count I: Title VII Against the City

Count I of Plaintiff's Second Amended Complaint asserts that the City violated Title VII, by discriminating against and/ or harassing Plaintiff because of his race, creating a racially hostile work environment, and retaliating against Plaintiff. (Doc. # 46, at Count I). The City concedes that it is a proper defendant under the provisions of Title VII. At this stage in the litigation, the court cannot conclude that "it appears beyond a doubt that the plaintiff can prove no set of facts in support of [this claim] which would entitle him to relief." Accordingly, the City's motion to dismiss the Plaintiff's Title VII claim is due to be denied.

### ii.    Count XVII:  Breach of Contract Against the City

Additionally, because the City of Madison did not move to dismiss Count XVII , which alleges breach of an express or implied employment contract, this claim remains in the case.[14]

---

[14] As discussed in Section V(B) *supra*, the portion of Count XVII alleging that the individual Defendants breached an express or implied employment contract is due to be dismissed.

### iii.   Count XVIII: Fraud, Misrepresentation, Deceit Against Chief Busken

Finally, the portion of Count XVIII alleging specifically that Chief Busken committed fraud, misrepresentation, or deceit when he "innocently, recklessly, or intentionally represented to the Plaintiff that the Plaintiff would receive only a warning for conduct alleged against the Plaintiff . . . . [and] represented to the Plaintiff that his position as a Narcotics Investigator was being abolished and, as a result, the Plaintiff either request a voluntary demotion or be terminated" remains in the case because it at least arguably satisfies the Fed. R. Civ. P. 9(b) specificity requirement.

### C.   Claims to Be Repleaded

The court has determined that the following claims can remain in the case provided that Plaintiff repleads them in accordance with established law: Counts II (with the exception of the wantonness claim against the City, which is due to be dismissed as discussed in Section V(A)(vi) *supra*),  IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV, and XX.  The ability to replead the above-referenced claims is conditioned on Plaintiff's compliance with the following instructions.

First, the court notes that the deadline to amend pleadings in this case expired in December 2003, and that, during the course of this litigation, the Plaintiff has already been allowed to amend his complaint two times in this court.  Therefore, although the Plaintiff will be granted *one final chance* to replead the claims outlined above, the court will not accept a third amended complaint until the parties have engaged in a good faith discussion regarding the contours of the law underlying those claims and the validity of any potential defenses.  Second, Plaintiff's repleaded federal claims should comport with the relevant statutory and case law authority under §§ 1981 and 1983, including but not limited to the mandates contained in *Butts v. County of Volusia*, 222 F.3d 891, 894-95 (11th Cir. 2000) (§ 1983 provides the exclusive remedy for obtaining relief against a state actor for

violation of rights secured by § 1981); *McKinney v. Pate*, 20 F.3d 1553 (11th Cir. 1994) (addressing maintainable claims for deprivation of substantive and procedural due process rights) and *Bell v. City of Demopolis*, 86 F.3d 191, 192 (11th Cir. 1996) (same); *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995) (requiring that plaintiffs allege some personal involvement on the part of the supervisory official that is linked to the alleged constitutional violation); and *Marsh v. Butler County*, 268 F.3d 1014, 1035 (11th Cir. 2001) (en banc) (establishing that individual defendants cannot be held liable under § 1983 under a theory of respondeat superior). Third, the Plaintiff's amended complaint should contain only those § 1983 claims against individual Defendants that Plaintiff, in good faith, believes can withstand the assertion of a qualified immunity defense. In other words, for all such claims that involve the performance of a defendant's discretionary function, Plaintiff may replead only if he is satisfied that he can demonstrate (1) the defendant's conduct violated federal law, and (2) the violation was so obvious that a reasonable public official in the same position as the defendant would know that his conduct violated clearly established law.[15] Fourth, the Plaintiff's amended complaint should contain only those state law claims against individual Defendants that Plaintiff, in good faith, believes can withstand the assertion of a state law immunity defense. Finally, the court will not allow Plaintiff to assert new claims against Defendants or to resurrect any dismissed or foregone claims at this stage in the litigation.[16]

---

[15] Perhaps the principal method for making such a showing is to demonstrate that facts surrounding the alleged violation are "materially similar" to the facts of a preexisting case rendered by the Supreme Court, Eleventh Circuit, or Alabama Supreme Court such that the alleged violation in this case was "clearly established" as a violation of federal law at the time of the incident. *Marsh v. Butler County, Alabama*, 268 F.3d 1014, 1032-1033 (11th Cir. 2001). The Plaintiff should be prepared to cite to a specific case(s).

[16] For example, although at one point in the litigation Plaintiff apparently asserted a § 1983 claim against the City, that claim was not reasserted in Plaintiff's Second Amended Complaint.

Plaintiff shall have until May 28, 2004, to comply with the above instructions and to file his final amended complaint.

## VI.    Conclusion

For the reasons stated above, the court has determined that Defendants' motions to dismiss (Docs. # 47, 50, 53) are due to be granted in part and denied in part.  Specifically,

(1) **The following counts are due to be dismissed:**  All claims alleged against the "City of Madison Police Department," in addition to Count II (only wantonness claim against the City), Count III, Count XVI, Count XVII (only breach of contract against individual Defendants), Count XVIII (only general fraud allegations against "Defendants the City of Madison, Madison Police Department, Daniel Busken, Lee Weaver, Jan Wells, and/or one or more of the Fictitious Parties"), Count XIX, and Count XXI, as alleged against the other Defendants.

(2) **The following counts remain in the case:**  Count I, Count XVII (only breach of contract against the City), and Count XVIII (only specific fraud allegations against Chief Busken).

(3) **The following counts remain in the case but must be repleaded, on or before June 11, 2004,  in accordance with the instructions outlined above:** Count II (only negligence claims against the City and individual Defendants and wantonness claim against the individual Defendants), Count IV, Count V, Count VI, Count VII, Count VIII, Count IX, Count X, Count XI, Count XII, Count XIII, Count XIV, Count XV, and Count XX.

A separate order will be entered.

---

Plaintiff is forbidden from resurrecting that claim, or any other foregone claims, when he repleads.

DONE this ___14th___ day of May, 2004.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE